IN UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

KATIE REIDL,

        Plaintiff,

vs.

KENNETH J. BRAITHWAITE, SECRETARY OF THE NAVY,

        Defendant.

**COMPLAINT**
**(Jury Trial Requested)**

The Plaintiff, KATIE REIDL, by and through her undersigned attorney hereby makes the following claims and allegations:

## I. JURISDICTION AND VENUE

1.1     The Plaintiff initiated contact with the EEO on November 4, 2019 (ROI 16).

1.2     The Plaintiff initiated a complaint of discrimination with the EEO office at the Puget Sound Naval Shipyard and Intermediate Maintenance Facility, alleging that she had been discriminated against on the following bases (ROI 17):

    a) Physical Disability (PTSD with mild cognitive impairment due to residuals of meningioma surgery)

    b) Mental Disability (PTSD with mild cognitive impairment due to residuals of meningioma surgery)

    c) Reprisal

1.3   The EEO issued Plaintiff a notice of her right to file a formal complaint on February 7, 2020. (ROI 16)

1.4   Plaintiff timely filed a formal charge of discrimination with the EEO on February 20, 2020, within 15 days of receiving the notice of right to file a formal complaint. (ROI 16)

1.5   On March 26, 2020, the Plaintiff timely submitted a notice of deficiency to the Defendant regarding claims accepted for review and noted that the following claims should be included in the Defendant's EEO formal investigation:

1. She was told that her requalification practical had been cancelled'

2. She was subjected to a disciplinary investigation (fact finding) by Dave Donovan regarding what he termed as an "incident that occurred this morning." This turned out to be an inquiry actually directed to the FAM issue which had occurred in October. The investigation was in response to a complaint allegedly made by James Shaw alleging that Ms. Reidl had created a hostile work environment for him in October as a result of the FAM discussion. (You did mention this one under Claim 3 in your letter).

3. After Ms. Reidl informed Ms. Cochran, her branch head, that she believed she was being subjected to harassment and retaliation from Mr. Shaw, Ms. Cochran failed to take prompt or effective action to address the complaint.

1.6   On April 10, 2020, the Defendant's Equal Employment Opportunity Deputy Director issued Plaintiff a notice of acknowledgement of Partial Dismissal and Acceptance of Claims, which included 5 claims, including: (ROI 48-49)

a) Claim 1. Complainant alleges that based on disability (mental and physical) and reprisal (no EEO activity or opposition identified) she was discriminated against when on 6 December 2019, Complainant resigned (constructive discharge) from her position.

b) Claim 2. Complainant alleges that based on disability (mental and physical) and reprisal (no EEO activity or opposition identified) she was subjected to workplace harassment resulting in a hostile work environment when:

   1) In November 2019, she was questioned by Code 105.3 management about the Familiarization Training (FAM) incident from October 2019 and she was asked to write a statement of fact;

   2) In October 2019, Mr. Shaw humiliated Complainant and repeatedly stated she was "wrong" during FAM training;

   3) In November 2018, Ms. Cochran made jokes about Complainant's disability during a conference meeting to include saying "she communicated using animal noises";

   4) In June 2018, Mr. Shaw on multiple occasions, spoke aggressively and/or yelled at Complainant; and

   5) In June 2018, Mr. Shaw accused Complainant of spreading rumors about him and subsequently was questioned by multiple individuals during a private meeting.

1.7   Plaintiff's informal and formal complaints to the EEO alleged that Defendant had engaged in violations of the Rehabilitation act of 1973, 29 U.S.C. § 701 et seq.

1.8   On August 13, 2020, defendant notified Plaintiff that it had completed its formal investigation of Plaintiff's allegations of discrimination.

1.9 On September 9, 2020, Defendant issued Plaintiff a Final Agency Decision regarding her allegation that, on December 6, 2019, she was constructively discharged from employment with the Defendant.

1.10 The Plaintiff has exhausted administrative remedies as to the claims raised in this Complaint, has now opted to pursue this case in the U.S. District Court.

1.11 This Complaint was filed within 90 days of Plaintiff's receipt of the September 9, 2020 Final Agency Decision and right to sue.

1.5 All parties and subject matter herein mentioned are within the jurisdiction of this Honorable Court.

## II. STATUS OF PLAINTIFF

2.1 The Plaintiff, Katie Reidl, has resided in the County of Kitsap at all times material to this Complaint.

2.2 The Plaintiff suffers from a permanent medical condition, PTSD with mild cognitive impairment due to residuals of meningioma surgery.

2.3 Plaintiff is a qualified individual with a disability, as defined under the Rehabilitation Act of 1973.

## III. STATUS OF DEFENDANT

3.1 The Defendant is a Federal Agency and is an employer within the scope of the definition of employer under the Rehabilitation Act of 1973, and is subject to the requirements and prohibitions of the act.

3.2 Defendant was Plaintiff's employer.

## IV. FACTS

4.1 Sections I, II, and III are hereby incorporated, verbatim.

4.2 Plaintiff was diagnosed with Depression and anxiety disorders in 2008 by doctors from the Veteran's Administration.

4.3 In February of 2019, Plaintiff was diagnosed with Post Traumatic Stress Disorder by her medical provider from the Veteran's Administration.

4.4 In February of 2019, Plaintiff submitted medical documentation of her medical conditions to the Defendant.

4.5 Without mitigation, Plaintiff's medical condition caused her occupational and social impairment, difficulty in establishing work and social relationships, near continuous panic affecting her ability to function socially, memory loss and anxiety.

4.6 Plaintiff worked for Defendant as a Physical Science Technician.

4.7 Plaintiff controlled the symptoms of her medical condition with medication, speech therapy, and counseling sufficiently to be able to perform the essential functions of her position as a Physical Science Technician.

4.8 From October of 2017 to January of 2018, Plaintiff had been assigned to a GS-12 position temporarily.

4.9 In or about April of May of 2018, Plaintiff notified her supervisor that she was seeing a speech pathologist for a service-related disability and that, due to her service-related disability, she did not want to pursue, at that time, a promotion to a supervisor position.

4.10 Plaintiff, instead, notified her supervisor that she would be ready to fulfill the duties of a GS-11, non-supervisory position.

4.11 Plaintiff's supervisor declined to place Plaintiff in the GS-11 non-supervisory position and subjected her to a forced backshift notice.

4.12    In June of 2018, Plaintiff opposed Defendant's denial of her application for the GS-11 position and the forced backshift notice as discrimination based on consideration of her disability.

4.13    During the following months, Plaintiff was subjected to harassment from supervisors and co-workers motivated by reprisal against her for having asserted that she had a disability and motivated by reprisal for her having opposed discrimination by her supervisor, including:

a) On 6-8-18, while Plaintiff was in a training class presented by James Shaw, Mr. Shaw confronted her in the class, accusing her of being "part of the problem" and referred to her as "entitled;"

b) During a two week "think tank" group in which Plaintiff participated, Mr. Shaw routinely became aggressive and loud with her and other participants, exacerbating the symptoms of Plaintiff's disabilities;

c) On June 11, 2018, Plaintiff explained to Mr. Shaw that his loud confrontational behavior was exacerbating her disability (anxiety disorder and PTSD). After acknowledging that she had disclosed a disability to him and requested that he avoid loud aggressive behavior as an accommodation, he continued to exhibit this behavior towards Plaintiff;

d) Plaintiff reported to supervisors Jacob Deacon and Maxwell Hughey that she was being harassed by Mr. Shaw, to which they would respond "that's just how James is" without taking any remedial action;

e) Plaintiff reported that she was being harassed by Mr. Shaw to her supervisor, Branch Head Kristi Cochran and Mr. Donovan, both of whom told her that Mr. Shaw was simply "passionate" while failing to take any remedial action.

f) On 6-26-18, Plaintiff received notice that she was being forced to backshift

g) During June of 2018, Plaintiff was subjected to interrogation based on allegations that she had spread rumors about Mr. Shaw;

h) Plaintiff was excluded from meetings and discussions

4.14 During November of 2018, while on a temporary duty assignment in New Hampshire, Plaintiff's supervisor, Kristi Cochran, subjected her to harassment based on her disability including:

a) Disclosing Plaintiff's medical conditions and making jokes or mocking Plaintiff about the medical conditions in front of other workers;

b) Mocking Plaintiff's speech patterns, trouble remembering words, and stuttering;

c) Making fun of Plaintiff's need to use non-verbal cues when communicating with others as a compensation for symptoms of her disability;

d) Mocking Plaintiff in front of other workers by announcing that "Katie communicates through animal noises,"

4.15 Defendant removed Plaintiff from her position in the New Hire office, ostensibly to fill it with a GS-11 position (Plaintiff was not a GS-11 at the time).

4.16 Ms. Cochran explained to Plaintiff that she as sending Plaintiff to work at the "waterfront" in order to gain the experience she would need in order to be promoted to a GS-11 position.

4.17 Plaintiff was not moved to the waterfront, but was moved to a position in BL 983.

4.18 Plaintiff applied for a GS-11 promotion and was granted the promotion despite not having worked at the waterfront and not having completed the things that Ms. Cochran claimed were necessary for a promotion to GS-11.

4.19 In September of 2019, Plaintiff was notified that she would have to take examinations to re-qualify for certifications needed to perform her job.

4.20 On October 3, 2019 and October 4, 2019, Plaintiff attended a class for the re-qualification exam which was taught by James Shaw and Jacob Deacon.

4.21 Mr. Shaw began to harass the Plaintiff based on the disability that she had disclosed to him at the last training session that she had attended with him by:

a) Upon seeing that Plaintiff was in the class, Mr. Shaw opened the class by announcing that he could be perceived to be abrasive and asking the class to let him know if he upset any of them;

b) Interrupting class approximately three times and insisting in front of the class, that Plaintiff appeared to be upset;

c) When Plaintiff insisted that she was not upset, Mr. Shaw insisted she was, announcing that the training would not be adequate if Plaintiff was upset;

d) Withdrawing from the training and refusing to complete the instruction meant to prepare Plaintiff and another student for a re-qualification exam;

e) Reporting, falsely, to Plaintiff's supervisors that she had initiated an "altercation" with Mr. Shaw during the class in order to initiate an "investigation" by management.

4.22 On November 4, 2019, defendant required Plaintiff to submit a statement regarding the allegation from Mr. Shaw that she had caused an "altercation" with him at the October 3rd training seminar and notified the Plaintiff that she faced potential disciplinary action.

4.23 On November 5, 2019, as a result of the harassment from Defendant regarding Mr. Shaw's allegation, Plaintiff suffered severe emotional distress and was required to take leave from work.

4.24 On November 6, 2019, Plaintiff made an appointment to speak with an EEO counselor regarding her claims of disability harassment.

4.25 On November 8, 2019, Plaintiff met with Defendant's EEO counselor to make a complaint of discrimination.

4.26 As a result of the defendant's actions in causing and allowing continuing, severe and pervasive harassment and retaliation against the Plaintiff, the Plaintiff suffered severe emotional distress which exacerbated her disability.

4.27 Defendant's intention, in continuing to harass and allow harassment of the Plaintiff at work was to force Plaintiff to resign from her employment.

4.28 On November 22, 2019, Plaintiff gave the Defendant two weeks' notice of her resignation date of December 6, 2019.

4.29 On December 6, 2019, Plaintiff resigned from her employment with the Defendant and was constructively discharged.

### V. FOR A FIRST CAUSE OF ACTION
### HARASSMENT BASED ON DISABILITY and RETALIATION
### In violation of the Rehabilitation Act of 1973

5.1 The Defendant is an employer subject to the requirements and prohibitions set forth in the Rehabilitation Act of 1973.

5.2 The Plaintiff is a qualified individual with a disability, as defined under the Rehabilitation Act of 1973.

5.3 Plaintiff disclosed her disabilities to her supervisors and asked for consideration or accommodation in the form of:

a) Plaintiff asked her supervisor, Ms. Cochran, to allow Plaintiff to stay in her position rather than be promoted;

b) Plaintiff explained to Mr. Shaw that she suffered from debilitating anxiety when he was unnecessarily loud and physically and emotionally aggressive towards her and others in a classroom setting and asked him to tone down his presentation.

5.4 Ms. Cochran, Plaintiff's supervisor belittled and mocked Plaintiff because of her disability and the symptoms of her disability in a manner so severe and pervasive that it rose to the level of a hostile work environment for Plaintiff.

5.5 Mr. Shaw, who was in a supervisory-type role, responsible for teaching Plaintiff skills and information that she needed in order to maintain certifications to be able to do her job, knowingly subjected Plaintiff to belligerent, mocking, aggressive and loud behavior as her instructor which was so severe and pervasive that it created a hostile working environment for Plaintiff after being informed that this behavior exacerbated the symptoms of her disability.

5.6 Defendant failed to take prompt or effective remedial actions to stop or address the unwanted harassment to which Plaintiff was being subjected at work.

5.7 As a direct and proximate result of the Defendant's knowing and willful unlawful actions, the Plaintiff:

a) Suffered severe emotional distress;

b) Required medical treatment;

c) Suffered the loss of her employment position due to the results of emotional distress brough on by Defendant's unlawful actions and omissions and the benefits thereof;

d) Incurred attorney's fees and costs of this action.

## VI. FOR A FIRST CAUSE OF ACTION
## CONSTRCUTIVE DISCHARGE
### In violation of the Rehabilitation Act of 1973

6.1   Sections I through V are hereby incorporated, verbatim.

6.2   Plaintiff disclosed to Defendant that, because of her disability, Plaintiff did not feel ready to assume the duties of a GS-12.

6.3   Plaintiff disclosed to Defendant that, because of her disability, she suffered severe anxiety and emotional distress when subjected to Mr. Shaw's loud, aggressive and confrontational teaching style.

6.4   After Plaintiff made these disclosures to Defendant (set forth in paragraphs 6.2 and 6.3) and because Plaintiff made these disclosures to Defendant, the Defendant intended to place Plaintiff in a position where she would resign her employment position with the Defendant.

6.5   Because of Defendant's actions in moving forward with a disciplinary process against the Plaintiff and subjecting Plaintiff to a hostile work environment, and because of defendant's omissions, in failing to accommodate Plaintiff and in failing to take prompt and effective action to stop ongoing harassment, the Plaintiff was put in a position such that her working conditions were so intolerable that any reasonable e person in her position would have felt compelled to resign.

6.6   Defendant's actions and omissions, aimed at forcing Plaintiff to resign were successful.

6.7   As a direct and proximate result of Defendant's unlawful actions and omissions, Plaintiff was constructively discharged and:

a)   Suffered severe emotional distress;

b)   Suffered the loss of her employment;

c)   Suffered lost wages and future lost wages;

d)   Suffered lost benefits and future lost benefits;

e)   Incurred attorney's fees and costs of pursuing this action.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment against the Defendant, for all damages, reasonable attorney's fees and costs and equitable remedies set forth in this complaint and/or allowed, provided for or permitted by the common law, statutory law, by the Rehabilitation Act of 1973 in such an amount as shall be determined by the finder of fact under the evidence presented at trial.

November 29, 2020

                                            *s/Chalmers C. Johnson*
                                            CHALMERS C. JOHNSON, WSBA #40180